IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| LAWRENCE ANTHONY PAGE, | ) | |
|  | ) | |
| Petitioner | ) | |
|  | ) | |
| vs. | ) | |
|  | ) | Civil Action No. 04-1364 |
| FRANK GILLIS, THE DISTRICT | ) | Judge Conti |
| ATTORNEY OF THE COUNTY OF | ) | Magistrate Judge Hay |
| ALLEGHENY and THE BOARD OF | ) | |
| PROBATION AND PAROLE | ) | |
|  | ) | |
| Respondents | ) | |
|  | ) | |

REPORT AND RECOMMENDATION

RECOMMENDATION

It is respectfully recommended that the petition filed
pursuant to 28 U.S.C. § 2254 be dismissed and that a certificate
of appealability be denied.

REPORT

Lawrence Anthony Page ("Page") is a state prisoner who
seeks federal habeas relief pursuant to 28 U.S.C. § 2254.
Because his § 2254 petition was not filed timely, it should be
dismissed.  Alternatively, because he failed to file a petition
to withdraw his guilty plea and/or file a direct appeal from his
judgment of conviction, he waived any claims as to defects in the
guilty plea proceedings.  Morever, because he failed to properly
file a petition for allowance of appeal ("PAA") to the State
Supreme Court from the Superior Court's October 13, 1999 order
affirming his probation revocation and the imposition of a prison

sentence, Page procedurally defaulted any claims of defects in those proceedings.

### A.   Factual and Procedural History

On May 18, 1994, Page appeared with his public defender attorney and entered guilty pleas to two criminal complaints, one alleging, inter alia, rape and, the second alleging, inter alia, unlawful restraint.  The Court of Common Pleas of Allegheny County, the Honorable Donna Jo McDaniel presiding, imposed a sentence of 20 years probation on the rape charge and a sentence of 5 years probation on the unlawful restraint charge to be served concurrently to the probation imposed for the rape conviction.  No petition to withdraw the guilty plea was filed nor was any appeal filed.

After Page violated his probation, Judge McDaniel,  on September 2, 1998, held a probation revocation hearing, at which Page was represented by counsel.  Finding that Page had violated the terms of his probation, Judge McDaniel sentenced him to serve six to twelve years on the rape conviction but closed out the unlawful restraint conviction.

On October 2, 1998, Page's public defender filed a notice of appeal to the Superior Court.  On October 13, 1999, the Superior Court affirmed the judgement of sentence.  Doc. 7, Ex. 8.  Page then filed a pro se PAA.  However, as there were deficiencies in the PAA, the Pennsylvania Supreme Court's clerk

sent a notice informing him of deficiencies in his petition and requesting that he correct them.  After Page had filed his pro se PAA, on November 24, 1999, a petition for leave to file a PAA nunc pro tunc was filed by the public defender's office.  Doc. 7, Ex. 10.  On January 19, 2000, the Pennsylvania Supreme Court's clerk sent a letter returning Page's pro se PAA for failure to correct the deficiencies.  Doc. 7, Ex. 11.  The motion for leave to file a nunc pro tunc PAA was discontinued.[1]

In the interim, on December 17, 1999 Page sent in to the Allegheny County Common Pleas Court a "Motion to Withdraw Guilty Plea under Post Conviction Collateral Relief." Subsequently, on  January 19, 2000, Page filed in the Court of Common Pleas of Allegheny County a nearly identical motion which the court denied by order dated February 2, 2000.

On March 29, 2000, Page filed a pro se Post Conviction Relief Act ("PCRA") motion and counsel was appointed to represent him.  On June 6, 2000, Page's counsel filed a no-merit brief with the Common Pleas court and a petition to withdraw.  Doc. 7, Ex. 15.  On June 8, 2000, Judge McDaniel granted the motion to withdraw and gave notice of her intent to dismiss the PCRA petition.  The Court dismissed the motion by order dated July 12, 2000.  Page filed a pro se notice of appeal to the Superior Court

---

[1]     The Court takes judicial notice of the docket of the Pennsylvania Supreme Court in <u>Commonwealth v. Page</u>, No. 166 Misc.Dkt. 1999.

on August 2, 2000.   On November 28, 2001, the Superior Court affirmed the denial of PCRA relief.   Page did not file a PAA from the Superior Court's decision.

On June 27, 2002, Page filed a pro se petition Credit for Time Spent in Custody.  It appears that this petition remains pending.[2]

On January 15, 2003, Page filed a pro se PCRA petition claiming that the guilty plea was unlawfully induced.  The Common Pleas Court denied the PCRA petition on February 24, 2003. Apparently, no appeal was taken.

On April 22, 2003, Page filed a writ of mandamus seeking to have Judge McDaniel intervene in the Parole Board's consideration of Page for parole.  This petition appears to remain pending.

On May 27, 2004, Page filed a second petition for time credit.  This petition appears to remain pending.

On May 27, 2004 Page filed a third PCRA petition which appears to remain pending.

Page was granted leave to proceed in forma pauperis on the instant habeas petition (doc. 3).  Page's habeas petition is

---

[2]     Although the court concludes that AEDPA's statute of
limitations ran out on November 2, 2002, the court
supplies the remaining procedural history for the sake
of completeness.

4

not a model of clarity.  However, it appears that he is raising the following issues:

> no evidence presented [whether at his guilty plea hearing or at his probation revocation hearing, Page does not make clear], no presentence report [was consulted by Judge McDaniel at his probation revocation hearing and sentencing to incarceration], manifestly excessive sentence, ineffective assistance of counsel [apparently at the probation revocation proceedings] and unlawful induced guilty pleas.

Doc. 3 at ¶ 13.  The Respondents have filed an answer in which they raised the statute of limitations as well as a claim of procedural default.  Doc. 7.  Page did not file a traverse.

### B.  Discussion

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. I, §101 (1996) ("AEDPA")is applicable to this case.  28 U.S.C. §2244; <u>Werts v. Vaughn</u>, 228 F.3d 178, 195 (3d Cir. 2000) ("Since Werts filed his habeas petition on March 18, 1997, after the effective date of the AEDPA, we are required to apply the amended standards set forth in the AEDPA to his claim for federal habeas corpus relief.") (footnote omitted).  As such, AEDPA required Page to file his habeas petition within one year of the following enumerated events:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--

> (A) the date on which the judgment became final
> by the conclusion of direct review or the
> expiration of the time for seeking such review;
>  . . . .
> (D) the date on which the factual predicate of
> the claim or claims presented could have been
> discovered through the exercise of due diligence.
> (2) The time during which a properly filed
> application for State post- conviction or other
> collateral review with respect to the pertinent
> judgment or claim is pending shall not be counted
> toward any period of limitation under this
> subsection.

28 U.S.C. § 2244(d).

The Respondents contend that Page's instant petition is untimely because it was not filed within one year of his conviction becoming final and/or within one year of his sentence of incarceration being imposed after his probation was revoked. We agree.

As noted, Page was convicted on his guilty plea on May 18, 1994, and the judgment of sentence was imposed on that same date. Page had 30 days to file his appeal to the Superior Court; no appeal was taken. <u>See</u> Pa. R.App. P. 903(a) (notice of appeal must be filed within thirty days of entry of lower court order); <u>see also</u> Pa. R.Crim. P. 720(A)(3); <u>Commonwealth v. Green</u>, 862 A.2d 613, 615-18 (Pa.Super. 2004). Because Page did not file an appeal, his conviction became final on June 17, 1999, that is, at the expiration of the time for filing an appeal from the sentence. <u>See</u>, <u>e.g.</u>, <u>Morris v. Horn</u>, 187 F.3d 333, 337 n. 1 (3d

Cir. 1999); <u>Kapral v. United States</u>, 166 F.3d 565, 575, 577 (3d Cir. 1999).

Because Page's conviction became final prior to the effective date of AEDPA, Page had at least one year after April 24, 1996, that is, the effective date of AEDPA, in which to file his Section 2254 petition.  <u>See</u> <u>Burns v. Morton</u>, 134 F.3d 109, 111 (3d Cir. 1998)(establishing a one year grace period after AEDPA's enactment).  Hence, Page would have had until April 24, 1997 in which to file his habeas petition attacking deficiencies in his conviction and guilty plea proceedings.  Page did not file the present habeas petition until, at the earliest, August 26, 2004, the date whereon he signed his in forma pauperis ("IFP") application.[3]  While it is true that a properly filed post

_____

[3]   The court will deem the date of the filing to be the date Page signed his IFP application.  The so-called "prisoner mail box rule" provides that "a pro se prisoner's habeas petition is deemed filed at the moment he delivers it to prison officials for mailing to the district court." <u>Burns v. Morton</u>, 134 F.3d 109, 113 (3d Cir 1998).  Absent proof of the exact date of delivering the habeas petition to the prison authorities, the court will treat August 26, 2004, the date whereon Page signed his IFP application, as the filing date.  <u>See</u>  <u>Cromwell v. King</u>, 27 Fed.Appx. 13, 14 (2d Cir. 2001)("In the absence of other evidence regarding the date on which Cromwell's petition was handed to prison officials for mailing, we consider his petition to have been filed on September 2, 1997, the date on which petitioner signed his in forma pauperis application. <u>See</u> <u>Rhodes v. Senkowski</u>, 82 F.Supp.2d 160, 165 (S.D.N.Y.2000) (collecting cases).");  <u>Henshaw v. Commissioner, Dept. of Correction</u>, No. 99-848-SLR, 2000 WL 777868 (D. Del. June 8, 2000).

conviction or collateral petition that was filed and/or pending as of the effective date of AEDPA (April 24, 1996) would have tolled the running of the limitations grace period,[4] Page did not file any proceedings in state court with respect to this conviction between April 24, 1996 and April 24, 1997. Accordingly, there was no tolling of AEDPA's statute of limitations. Hence, any federal claims with respect to defects in the guilty plea proceedings and imposition of the probation sentences are time barred now. See, e.g., Fielder v. Varner, 379 F.3d 113 (3d Cir. 2004)(AEDPA's statute of limitations is calculated on a claim by claim basis).

As to Page's claims with respect to the alleged deficiencies in his probation revocation and sentencing they, too, are time barred. The court utilizes the probation revocation and sentencing date of September 2, 1998, as the date when "the factual predicate of [his] claim(s) could have been discovered." 28 U.S.C. § 2244(d)(1)(D). The Court further deems that Page's appeal from the September 2, 1998 judgment tolls AEDPA's running of the statute of limitations, either because it constitutes a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment" within the meaning of 2244 (d)(2), or because

---

[4]     See 22 U.S.C. § 2244(d)(2); Bennet v. Artuz, 199 F.3d 116, 119-22 (2d Cir. 1999), aff'd, 531 U.S. 4 (2000).

of equitable considerations.  The Superior Court's appeal was decided on October 13, 1999.   Tolling of AEDPA's limitations continued only until thirty days after the Superior Court affirmed the sentence because Page did not properly file a PAA, as the pro se PAA that he did attempt to file was ultimately rejected for not being in conformity with the filing requirements.  Doc. 7, Ex. 11 (letter returning PAA).  <u>See</u> <u>Pace v. DiGuglielmo</u>, __ U.S. __, 125 S.Ct. 1807, 1811 (2005)("[A]n application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings' including 'time limits upon its delivery'")(<u>quoting</u> <u>Artuz v. Bennett</u>, 531 U.S. 4, 8 (2000)).   Thirty days after the Superior Court's order affirming the probation revocation and sentence of confinement is November 12, 1999.[5]  As the appeal from the Superior Court's October 13, 1999 order is deemed to have been pending at least for a portion of November 12, 1999,[6] AEDPA's

---

[5]   In counting, the court does not include October 14, 1999, pursuant to Fed. R. Civ. P. 6 which provides that "In computing any period of time . . . the day of the act, event, or default from which the designated period of time begins to run shall not be included.  The last day of the period shall be included unless it is a Saturday, a Sunday or legal holiday. . . .").  October 14, 1999 is the "day of the act [or] event . . . from which the designated period of time begins to run" within the meaning of the Rule and hence not counted.

[6]   <u>See</u> <u>Freeman v. Pew</u>, 59 F.2d 1037, 1037 (D.C. Cir. 1932) ("it has long been the settled doctrine that the law, disregarding fractions, takes the entire day as the unit of time."); <u>In re Susquehanna Chemical Corp.</u>, 81

statute of limitations began to run as of November 13, 1999 with respect to Page's claims as to the September 2, 1998 revocation of probation and sentencing proceedings.  Page did file on December 17, 1999 and on January 19, 2000 motions to withdraw guilty plea, and assuming that they constituted properly filed post conviction or other collateral review petitions within the meaning of Section 2244(d)(2), they tolled the statute of limitations from December 17, 1999 to February 2, 2000, when they were essentially denied.[7]  Hence, AEDPA's limitations period ran from November 13, 1999 to December 16, 1999 for a total of 33 days.

Because Page did not file an appeal from the February 2, 2000 order, the Court deems these petitions to have been

---

F.Supp. 1, 9 (W.D. Pa. 1948)(general rule is that fractions of a day are to be disregarded), aff'd, 174 F.2d 783 (3d Cir. 1949).

[7]     The court assumes these filings to have tolled AEDPA's statute of limitations even though the purpose of these filings was to challenge the guilty plea that he had entered more than five years prior to the filing of these motions and not to challenge his probation revocation.  The order denying these motions is not contained in the record.  Doc. 7 at 6.  If these motions were denied as being untimely filed and/or procedurally improper, they would not have tolled AEDPA's statute of limitations.  Pace v. DiGuglielmo, supra.  In addition, these motions attacked the guilty plea and did not address the revocation of probation or the imposition of prison time.  See 28 U.S.C. § 2244(d)(2)(only a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment" tolls AEDPA's limitations period.

pending only until March 3, 2000, thirty days after February 2, 2000.  Hence, AEDPA's statute of limitations began to run again on March 4, 2000 and continued to run until March 29, 2000, when Page filed a PCRA petition, which filing tolled the statute of limitations.  Thus, between March 4, 2000 (the first date that his 2 motions to withdraw his guilty plea were no longer pending) to March 28, 2000 (the day before he filed his PCRA petition which tolled the limitations period), a total of 24 days ran.  Adding these 24 days to the 33 days that had already passed, a total of 57 days of AEDPA's 365 day limit passed.

        The March 29, 2000 PCRA motion was pending only until thirty days after November 28, 2001, the date whereon the Superior Court affirmed the denial of PCRA relief because Page did not file a PAA in the Pennsylvania Supreme Court.  Thirty days after November 28, 2001 is December 28, 2001.  As his appeal was deemed pending until December 28, 2001, and hence, AEDPA's statute of limitations was tolled on that date, AEDPA's statute of limitations would not have begun to run again until December 29, 2001.  Page apparently did not file anything further until June 27, 2002, when he filed a pro se motion for credit for time spent in custody, which apparently is still pending.  From December 29, 2001 until June 27, 2002, a total of 180 days ran of AEDPA's statute of limitations.  Adding this 180 days to the 57 days that previously ran yields a result of 237 days having run.

Because the June 27, 2002 motion for credit did not challenge the September 2, 1998 proceedings, it was not a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment" within the meaning of Section 2244(d)(2).  See, e.g., Hodge v. Greiner 269 F.3d 104, 107 (2d Cir. 2001)("Hodge's Article 78 proceeding did not challenge his conviction.  Rather, it sought material he claimed might be of help in developing such a challenge, in addition to the crime scene photographs he had already obtained. As Judge Schwartz noted, if a filing of that sort could toll the AEDPA limitations period, prisoners could substantially extend the time for filing federal habeas petitions by pursuing in state courts a variety of applications that do not challenge the validity of their convictions.").  Hence, AEDPA's statute of limitations was not tolled by the filing on June 27, 2002 of the motion for credit for time spent in custody.   Because AEDPA's statute of limitations was not tolled on June 27, 2002, it continued to run until it ran out on November 2, 2002.  Between June 27, 2002 and November 2, 2002, a total of 128 days passed. Adding these 128 days to the 237 days that had already passed as of June 26, 2002, yields a result of 365 days.[8]  Hence, AEDPA's

---

[8]     For purposes of AEDPA's one year statute of limitations, a "year" means 365 days.  See Patterson v. Stewart, 251 F.3d 1243, 1247 (9th Cir. 2001); Stokes v. Miller, 216 F.Supp.2d 169 (S.D.N.Y. 2000).

statute of limitations ran out on November 2, 2002 as to any claims that Page could raise concerning the September 2, 1998 proceedings which revoked his probation and sentenced him to a period of incarceration.  Page did not file his present petition until, at the earliest, August 26, 2004 nearly two years after November 2, 2002, the time when the one year statute of limitations ran out.

Notwithstanding the fact that Respondents raised the statute of limitations issue, Page has not argued for equitable tolling.  See, e.g., Polk v. Cain, No. Civ. A. 00-3026, 2001 WL 736755, *9 (E.D. La. June 23, 2001)("A person seeking the tolling of the statute of limitations period has the burden of showing circumstances exist that justify tolling.");  Balagula v. United States, 73 F.Supp.2d 287, 291 (E.D.N.Y. 1999)("The burden lays with the petitioner to establish the entitlement to equitable tolling.");  Turner v. Singletary, 46 F.Supp.2d 1238, 1243 (N.D. Fla. 1999)("The burden is upon the petitioner to show that equitable tolling is warranted.").  Accordingly, Page's petition should be dismissed as being time barred.

Alternatively, even if the petition were not time barred, Page has procedurally defaulted his claims.  The doctrine of procedural default provides that if a federal habeas petitioner has either failed to present a federal claim in the state courts or failed to comply with a state procedural rule,

13

and such failure would provide a basis for the state courts to decline to address the federal claim on the merits, then such federal claims may not be addressed by the federal habeas court. See, e.g., Wainwright v. Sykes, 433 U.S. 72 (1977) (failure to object at trial constituted waiver of issue under state law and hence, a procedural default under federal habeas law); Francis v. Henderson, 425 U.S. 536 (1976) (failure to comply with state procedure requiring challenges to composition of grand jury be made before trial constituted state waiver and, therefore, also constituted procedural default for purposes of federal habeas); O'Sullivan v. Boerckel, 526 U.S. 838, 848-49 (1999) (failure to raise issue in discretionary appeal to state supreme court constituted a procedural default for habeas purposes).

However, procedural default will not be found based upon the failure to comply with state procedural rules unless the state procedural rule is "adequate" and "independent." Coleman v. Thompson, 501 U.S. 722, 750 (1991). A state rule of procedure is "adequate" if it is firmly established and applied with some consistency/regularly followed at the time of the alleged default. Doctor v. Walters, 96 F.3d 675, 684 (3d Cir. 1996). A state rule of procedure is "independent" if it does not depend for its resolution on answering any federal constitutional question. Ake v. Oklahoma, 470 U.S. 68, 75 (1985) ("when resolution of the state procedural law question depends on a

14

federal constitutional ruling, the state-law prong of the court's holding is not independent of federal law . . . .").

As well, a federal legal issue that was not properly raised in the state courts and, therefore, procedurally defaulted, may nonetheless be addressed by a federal habeas court if the petitioner shows cause for, and actual prejudice stemming from, the procedural default. Wainwright v. Sykes. In order "[t]o show cause, a petitioner must prove 'that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.' Murray v. Carrier, 477 U.S. 478, 488 (1986)." Sistrunk v. Vaughn, 96 F.3d 666, 675 (3d Cir. 1996). In order to show actual prejudice, "the habeas petitioner must prove not merely that the errors . . . created a possibility of prejudice, but that they worked to his actual and substantial disadvantage . . . . This standard essentially requires the petitioner to show he was denied 'fundamental fairness[.]'" Werts v. Vaughn, 228 F.3d at 193 (citations and some internal quotations omitted).

A second exception to the procedural default doctrine permits a federal court to address the merits of a procedurally defaulted claim where the petitioner can establish a "miscarriage of justice" which "will apply only in extraordinary cases, **i.e.**, 'where a constitutional violation has probably resulted in the conviction of one who is actually innocent....' Thus, to

15

establish a miscarriage of justice, the petitioner must prove that it is more likely than not that no reasonable juror would have convicted him." Werts v. Vaughn, 228 F.3d at 193 (citations omitted).

Moreover, a federal habeas court may decide that a habeas petitioner has procedurally defaulted a claim even though no state court has previously decided that the claim was procedurally barred under state law. See, e.g., Carter v. Vaughn, 62 F.3d 591, 595 (3d Cir. 1995)(requiring the federal district court to determine whether the petitioner's failure to appeal in the state court constituted a waiver under state procedural law that barred state courts from considering the merits and, therefore, constituted a procedural default for habeas purposes even though no state court had made a determination that petitioner's failure to appeal constituted waiver under state law); Chambers v. Thompson, 150 F.3d 1324, 1327 (11th Cir. 1998).

Lastly, if a petitioner has committed a procedural default and has not shown either cause and prejudice or a miscarriage of justice, the proper disposition is to dismiss the habeas petition with prejudice. See, e.g., Wainwright v. Sykes; McClain v. Deuth, 151 F.3d 1033 (Table), 1998 WL 516804, *2 (7th Cir. 1998); Redeagle-Belgarde v. Wood, 199 F.3d 1333 (Table),

1999 WL 985164, *4 (9th Cir. 1999); Thompson v. Champion, 996
F.2d 311 (Table), 1993 WL 170924, *3 (10th Cir. 1993).

Pennsylvania applies a rule of waiver in multiple
contexts.  An issue not raised at trial or on direct appeal or in
a petition for allowance of appeal is waived.  Commonwealth v.
Agie, 296 A.2d 741, 741 (Pa. 1972)("We have consistently held
that issues not raised in the court below are waived and cannot
be raised for the first time on appeal to this Court.")(citations
omitted); Commonwealth v. Steffish, 365 A.2d 865 (Pa. Super.
1976); Commonwealth v. Perea, 381 A.2d 494, 496 (Pa. Super.
1977)("The reason our review is confined to the one issue is
because the other issues were not raised in the trial below or in
post-verdict motions.  The appellate courts of Pennsylvania have
consistently held that issues not raised in the court below are
waived and cannot be raised for the first time on appeal.");
Commonwealth v. Mitchell, 445 A.2d 721, 723 (Pa. 1982)(issues not
raised on direct appeal are waived).

After he pleaded guilty to the charges, Page did not
seek to withdraw his plea nor did he file an appeal.
Pennsylvania law provides that where no request to withdraw a
guilty plea is filed and/or no appeal is filed, any issues able
to be raised are generally waived.  See, e.g., Commonwealth v.
Kroh, 654 A.2d 1168, 1171 n.1 (Pa. Super. 1995); Commonwealth v.
Bolding, 462 A.2d 278, 280 (Pa. Super. 1983)(failure to file

17

appeal from guilty plea waived issues that could have been raised).  The rule of waiving an issue by failing to file a petition to withdraw a guilty plea and/or by failing to file a direct appeal appears to be independent of federal law and, as demonstrated by the cases cited above, also appears to have been applied with sufficient consistency at the time of Page's waiver, i.e., in May - June 1994, and to be adequate as well.[9]  See, Romero v. Stickman, 271 F.Supp.2d 644 (E.D. Pa. 2003)(Under Pennsylvania law, petitioner waived his claims that there was not sufficient evidence to support his conviction and that his guilty plea was not voluntary by failing to pursue them on direct appeal in state court, and thus claims were procedurally defaulted in federal habeas proceedings).  Hence, Page has procedurally defaulted any claims he could raise with respect to the guilty plea itself.  Page has not argued and the record does not reveal cause for the default nor prejudice.  Neither has he argued a miscarriage of justice. Accordingly, Page's claims as to the guilty plea proceedings should be dismissed with prejudice.[10]

---

[9]    The rule of waiver for failing to file an appeal from a guilty plea appears to have been consistently applied from at least 1978 to 1999.

[10]   The sole exception to this waiver of issues is a claim that his plea counsel was ineffective.  Page does mention "ineffective assistance of counsel" in his habeas petition but does not specify which counsel he is alleging to have been ineffective.  Even assuming that he is alleging the ineffectiveness of his plea counsel, it does not appear that any issue of plea

Similarly, Page's failure to file a PAA from the Superior Court's October 13, 1999 denial of relief in his direct appeal of the imposition of his sentence of incarceration constitutes a waiver of any claims with respect to the revocation of his probation and imposing the sentence of incarceration. See Commonwealth v. Stanley, 446 A.2d 583, 585 n.1 (Pa. 1982)("These claims were not raised in appellant's petition for allowance of appeal, hence waived [sic]. Pa.R.A.P. 1115(a)(3); Commonwealth v. Drake, 489 Pa. 541, 414 A.2d 1023 (1980); Abramson v. Commonwealth, Public Utility Commission, 489 Pa. 267, 270 n.5, 414 A.2d 60, 62 n.5 (1980)."). This rule that where a PAA is not properly filed or an issue not raised in a PAA waives review appears to have been regularly and consistently applied so as to qualify as an "adequate" rule under the procedural default doctrine as early as November 1986, and up to and including October - November 1999, the time of Page's failure to file a PAA. See e.g., In re T.J., 739 A.2d 478, 481 n. 3 (Pa. Sept. 29, 1999)(applying rule of waiver where litigant did not file a petition for allowance of appeal); Beaty v. Patton, 700 F.2d 110, 111-12 (3d Cir. 1983) ("Beaty's failure to file a petition for allocatur in the Pennsylvania Supreme Court constitutes a procedural default that deprived the highest state court of an

---

counsel's ineffectiveness was ever raised in all three levels of the state courts. Hence, any issue of plea counsel's ineffectiveness would be procedurally defaulted as well.

19

opportunity to consider his constitutional claims."); <u>Wenger v. Frank</u>, 266 F.3d 218, 226 (3d Cir. 2001)(where federal habeas petitioner's failure to file a PAA occurred in April-May 1991, the Court of Appeals found such to constitute a procedural default for habeas purposes, noting that "[o]ur court has previously held that a petition for allowance of appeal is an available remedy in Pennsylvania, and we have held that claims were not exhausted or were procedurally defaulted because such review was not sought.")(citations omitted), <u>cert</u>. <u>denied</u>, 535 U.S. 957 (2002).[11]   In addition, Pennsylvania's rule of waiver

---

[11]   It was not until May 9, 2000, that the Pennsylvania Supreme Court promulgated a rule entitled "In re: Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases" No.  218 Judicial Administration Docket No. 1 which provided that a PAA need not be filed in order to exhaust state remedies, which may mean that failing to file a PAA would, thereafter, no longer constitute a waiver under state law.  In re:  Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases, No. 218 Judicial Administration Docket No. 1 (Pa. May 9, 2000) (per curiam ).  This order has been published at 561 Pa. CXXXVIII.  See also William P. Murphy, State High Court Signals Sea Change in Federal Habeas, PENNA. LAW WEEKLY, May 29, 2000, at 12.
Whatever the significance of this order for purposes of a federal court's habeas corpus analysis, and its impact on procedural default, if any, it is clear that the rule does not apply to cases, such as this one, wherein the time for filing a petition for allowance of appeal expired prior to May 9, 2000, the effective date of the rule.  <u>Wenger v. Frank</u>, 266 F.3d 218, 226 (3d Cir. 2001) ("we hold that Order 218 does not apply in cases in which the time to petition for review by the state supreme court expired prior to the date of the order.").
Hence, at the time Page failed to file his petition for

for failing to raise an issue in an appeal is "independent" of any federal law question. See, e.g., Diventura v. Stepniak, No. 95-CV-0443, 1996 WL 107852, at *3 (E.D. Pa. March 11, 1996) (finding Pennsylvania state court's application of the state's waiver rule to be "independent" of federal law).  As a result of Page procedurally defaulting any claims that could have been raised in his petition for allowance of appeal, which appears to include all of the claims that he now raises in his habeas petition concerning the September 2, 1998 proceedings, this court is barred from considering those claims, unless Page can establish cause and prejudice or a miscarriage of justice.

Page makes no allegation of cause for the default and in fact, on this record there is no apparent cause for such a default.  See, e.g.,  Smith v. Vaughn, 1997 WL 338851, at *5 ("Thus, because petitioner has not made any allegations or presented any evidence demonstrating cause and prejudice for his default or demonstrating that failure to consider count XI would result in a fundamental miscarriage of justice, the court cannot grant federal habeas review of count XI.").[12]

_____

allowance of appeal, *circa* October - November 1999, the Pennsylvania rule that an issue not raised in such a petition is waived, was regularly and consistently applied, thus permitting a federal habeas court to conclude that failure to comply with the rule constituted a procedural default.

[12]  Because Page has not shown "cause" the court need not address whether he suffered prejudice.  Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 762  (3d Cir.

Hence, having failed to show "cause", the only other avenue of overcoming the procedural default doctrine is for Page to show a fundamental miscarriage of justice. As noted above, in order to establish a miscarriage of justice, Page must show that a constitutional conviction has probably resulted in the conviction of one who is actually innocent. Murray v. Carrier, 477 U.S. at 496 (1986). Page fails to allege a miscarriage of justice as is his burden. See, e.g., Simpson v. Sparkman, 172 F.3d 49 (Table), 1998 WL 869967, *4 (6th Cir. 1998)("Therefore, the burden is on the defendant at this stage to make 'a colorable showing of factual innocence' in order to be entitled to the 'fundamental miscarriage of justice' exception"). Indeed, on this record, Page simply could not establish that a fundamental miscarriage of justice would occur if this court did not entertain his petition. Accordingly, Page has procedurally defaulted the issues he seeks to raise in this petition and no exception to the procedural default doctrine being established, those issues cannot form the basis of any relief in habeas.

As Page is time barred from bringing his claims, his petition should be dismissed. Alternatively, as he has procedurally defaulted his claims, his petition should be dismissed.

C.   **Certificate of Appealability**

---

1996) ("Because Moscato cannot show cause, we need not address the question of actual prejudice.").

Section 2253 of Title 28 U.S.C. generally governs appeals from district court orders regarding habeas petitions. Section 2253 essentially provides in relevant part that a certificate of appealability, which is a prerequisite for allowing an appeal to a Court of Appeals, should not be issued unless the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253 (c)(2). There is a difficulty in applying Section 2253(c)(2) when the District Court does not decide the case on the merits, i.e., declines to address questions of constitutional violations, but instead decides the case on a procedural ground without determining whether there has been a denial of a constitutional right.  See, e.g., Slack v. McDaniel, 529 U.S. 473 (2000); Walker v. Government of The Virgin Island, 230 F.3d 82, 89-90 (3d Cir. 2000).  Hence, the Court in Slack instructed that the analysis as to whether a certificate of appealability should issue to review a procedural question, has "two components, one directed at the underlying constitutional claims and one directed at the district court's procedural holding."  Slack, 529 U.S. at  484-85.  The test is conjunctive and both prongs must be met.  See Walker v. Government of the Virgin Islands, 230 F.3d at 90.

Applying this standard to the instant case, the court concludes that jurists of reason would not find it debatable whether dismissal of Page's claims based upon his failing to

23

comply with the AEDPA's statute of limitations and/or upon procedurally defaulting his claims was correct. Accordingly, a certificate of appealability should be denied.

III. <u>CONCLUSION</u>

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have seven (7) days from the date of service of the objections to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights.

Respectfully submitted,

/s/ Amy Reynolds Hay
AMY REYNOLDS HAY
United States Magistrate Judge


Dated: 19 September, 2005.


cc:  The Honorable Joy Flowers Conti
     United States District Judge

     Lawrence Anthony Page
     DS-9886
     SCI Coal Township
     1 Kelley Drive
     Coal Township, PA 17866-1021

     Rebecca D. Spangler
     Office of the District Attorney
     401 Allegheny County Courthouse
     Pittsburgh, PA 15219